# SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

**1.** *Parties*. The parties to this Agreement are Elisabet Principe ("Principe"), Nohelany Burey ("Burey"), Iyelen Espinosa ("Espinosa"), Roseline Servius ("Servius"), and Erlande Jean ("Jean"), Nomi Health, Inc. ("Nomi"), SBP Staffing & Recruiting LLC ("SBP"), SB Port Ventures, LLC ("SB Port"), and Trixie Belo-Osagie ("Belo-Osagie"). Collectively, Principe, Burey, Espinosa, Servius, and Jean are referred to as "Plaintiffs." Collectively, Nomi, SBP, SB Port, and Belo-Osagie are referred to as "Defendants." Collectively, Plaintiffs and Defendants are referred to as the "Parties."

On October 2, 2023, Principe filed a lawsuit in the U.S. District Court for the Southern District of Florida, titled *Elisabet Principe v. Nomi Health, Inc. et al.*, Case No. 1:23-cv-23763 (the "Lawsuit"), which alleged that Defendants had failed to pay them overtime under the Fair Labor Standards Act of 1938 ("FLSA"). Jean filed a notice of consent to join the Lawsuit on November 13, 2023. Espinosa and Servius filed notices of consent to join the Lawsuit on November 28, 2023. Burey filed a notice of consent to join the lawsuit on January 25, 2024.

Plaintiffs and Defendants are interested in avoiding all further potential legal costs and disputes, and in fully and expeditiously resolving the claims, charges, or issues of law or fact that were or could have been raised by Plaintiffs against Defendants in the Lawsuit, as of the date Plaintiffs sign this Settlement Agreement and Release of Claims (the "Agreement").

**2.** *Consideration for Release of Claims*. Plaintiffs will be paid a total of Seventy-Five Thousand Dollars ($75,000.00), allocated as follows:

*To Principe:*

- SBP, SB Port, and Belo-Osagie shall pay Principe a total of $3,256.77 as non-employee compensation, in exchange for Principe's release of any claims for allegedly unpaid amounts, including her claims under the FLSA. SBP's, SB Port's, and Belo-Osagie's receipt of an IRS Form W-9 completed and executed by Principe is a condition precedent to this payment. SBP, SB Port, and/or Belo-Osagie will issue an IRS Form(s) 1099 to Principe reflecting this payment.

- SBP, SB Port, and Belo-Osagie shall pay Principe a total of $3,256.77 as non-employee compensation, in exchange for Principe's release of any claims for liquidated damages under the FLSA. SBP's, SB Port's, and Belo-Osagie's receipt of an IRS Form W-9 completed and executed by Principe is a condition precedent to this payment. SBP, SB Port, and/or Belo-Osagie will issue an IRS Form(s) 1099 to Principe reflecting this payment.

- SBP, SB Port, and Belo-Osagie shall pay Principe $500.00 as non-employee compensation, in exchange for Principe's agreement to the confidentiality, nondisparagement, covenant not to sue, release of non-wage claims, and other provisions contained in this Agreement. SBP's, SB Port's, and Belo-Osagie's receipt of an IRS Form W-9 completed and executed by Principe is a condition precedent to this payment. SBP, SB Port, and/or Belo-Osagie will issue an IRS Form(s) 1099 to Principe reflecting this payment.

*To Burey:*

- SBP, SB Port, and Belo-Osagie shall pay Burey a total of $5,267.64 as non-employee compensation, in exchange for Burey's release of any claims for allegedly unpaid amounts, including her claims under the FLSA. SBP's, SB Port's, and Belo-Osagie's receipt of an IRS Form W-9 completed and executed by Burey is a condition precedent to this payment. SBP, SB Port, and/or Belo-Osagie will issue an IRS Form(s) 1099 to Burey reflecting this payment.

- SBP, SB Port, and Belo-Osagie shall pay Burey a total of $5,267.64 as non-employee compensation, in exchange for Burey's release of any claims for liquidated damages under the FLSA. SBP's, SB Port's, and Belo-Osagie's receipt of an IRS Form W-9 completed and executed by Burey is a condition precedent to this payment. SBP, SB Port, and/or Belo-Osagie will issue an IRS Form(s) 1099 to Burey reflecting this payment.

- SBP, SB Port, and Belo-Osagie shall pay Burey $500.00 as non-employee compensation, in exchange for Burey's agreement to the confidentiality, nondisparagement, covenant not to sue, release of non-wage claims, and other provisions contained in this Agreement. SBP's, SB Port's, and Belo-Osagie's receipt of an IRS Form W-9 completed and executed by Burey is a condition precedent to this payment. SBP, SB Port, and/or Belo-Osagie will issue an IRS Form(s) 1099 to Burey reflecting this payment.

*To Espinosa:*

- SBP, SB Port, and Belo-Osagie shall pay Espinosa a total of $5,120.75 as non-employee compensation, in exchange for Espinosa's release of any claims for allegedly unpaid amounts, including her claims under the FLSA. SBP's, SB Port's, and Belo-Osagie's receipt of an IRS Form W-9 completed and executed by Espinosa is a condition precedent to this payment. SBP, SB Port, and/or Belo-Osagie will issue an IRS Form(s) 1099 to Espinosa reflecting this payment.

- SBP, SB Port, and Belo-Osagie shall pay Espinosa a total of $5,120.75 as non-employee compensation, in exchange for Espinosa's release of any claims for liquidated damages under the FLSA. SBP's, SB Port's, and Belo-Osagie's receipt of an IRS Form W-9 completed and executed by Espinosa is a condition precedent to this payment. SBP, SB Port, and/or Belo-Osagie will issue an IRS Form(s) 1099 to Espinosa reflecting this payment.

- SBP, SB Port, and Belo-Osagie shall pay Espinosa $500.00 as non-employee compensation, in exchange for Espinosa's agreement to the confidentiality, nondisparagement, covenant not to sue, release of non-wage claims, and other provisions contained in this Agreement. SBP's, SB Port's, and Belo-Osagie's receipt of an IRS Form W-9 completed and executed by Espinosa is a condition precedent to this payment. SBP, SB Port, and/or Belo-Osagie will issue an IRS Form(s) 1099 to Espinosa reflecting this payment.

*To Servius:*

- SBP, SB Port, and Belo-Osagie shall pay Servius a total of $3,394.96 as non-employee compensation, in exchange for Servius's release of any claims for allegedly unpaid amounts, including her claims under the FLSA. SBP's, SB Port's, and Belo-Osagie's receipt of an IRS Form W-9 completed and executed by Servius is a condition precedent to this payment. SBP, SB Port, and/or Belo-Osagie will issue an IRS Form(s) 1099 to Servius reflecting this payment.

- SBP, SB Port, and Belo-Osagie shall pay Servius a total of $3,394.96 as non-employee compensation, in exchange for Servius's release of any claims for liquidated damages under the FLSA. SBP's, SB Port's, and Belo-Osagie's receipt of an IRS Form W-9 completed and executed by Servius is a condition precedent to this payment. SBP, SB Port, and/or Belo-Osagie will issue an IRS Form(s) 1099 to Servius reflecting this payment.

- SBP, SB Port, and Belo-Osagie shall pay Servius $500.00 as non-employee compensation, in exchange for Servius's agreement to the confidentiality, nondisparagement, covenant not to sue, release of non-wage claims, and other provisions contained in this Agreement. SBP's, SB Port's, and Belo-Osagie's receipt of an IRS Form W-9 completed and executed by Servius is a condition precedent to this payment. SBP, SB Port, and/or Belo-Osagie will issue an IRS Form(s) 1099 to Servius reflecting this payment.

*To Jean:*

- SBP, SB Port, and Belo-Osagie shall pay Jean a total of $959.88 as non-employee compensation, in exchange for Jean's release of any claims for allegedly unpaid amounts, including her claims under the FLSA. SBP's, SB Port's, and Belo-Osagie's receipt of an IRS Form W-9 completed and executed by Jean is a condition precedent to this payment. SBP, SB Port, and/or Belo-Osagie will issue an IRS Form(s) 1099 to Jean reflecting this payment.

- SBP, SB Port, and Belo-Osagie shall pay Jean a total of $959.88, as non-employee compensation, in exchange for Jean's release of any claims for liquidated damages under the FLSA. SBP's, SB Port's, and Belo-Osagie's receipt of an IRS Form W-9 completed and executed by Jean is a condition precedent to this payment. SBP, SB Port, and/or Belo-Osagie will issue an IRS Form(s) 1099 to Jean reflecting this payment.

- SBP, SB Port, and Belo-Osagie shall pay Jean $500.00 as non-employee compensation, in exchange for Jean's agreement to the confidentiality, nondisparagement, covenant not to sue, release of non-wage claims, and other provisions contained in this Agreement. SBP's, SB Port's, and Belo-Osagie's receipt of an IRS Form W-9 completed and executed by Jean is a condition precedent to this payment. SBP, SB Port, and/or Belo-Osagie will issue an IRS Form(s) 1099 to Jean reflecting this payment.

*To Plaintiffs' Counsel:*

- SBP, SB Port, and Belo-Osagie shall pay FairLaw Firm a total of $5,672.55 for attorneys' fees and costs. SBP, SB Port, and Belo-Osagie's receipt of an IRS form W-9 completed and executed by FairLaw Firm is a condition precedent to this payment. SBP, SB Port, and/or Belo-Osagie shall issue appropriate IRS Form(s) 1099 reflecting this payment.

- Nomi shall pay FairLaw Firm a total of $30,827.45 for attorneys' fees and costs. Nomi's receipt of an IRS form W-9 completed and executed by FairLaw Firm is a condition precedent to this payment. Nomi shall issue appropriate IRS Form(s) 1099 reflecting this payment.

Defendants will report their respective payment(s) above to the IRS as required by law. Plaintiffs acknowledge that they have not relied on any statements or representations by Defendants or their attorneys with respect to the tax treatment of the payments described in this section. If any taxing body determines that the tax treatment was incorrect and that greater amounts should have been withheld from any payment above (or any part thereof), Plaintiffs acknowledge and assume all responsibility for paying their shares of those amounts and further agree to indemnify and hold Defendants harmless for payment of their shares of any additional taxes and any interest and penalties thereon.

All Parties warrant that they are not aware of any attorneys' liens placed on this matter.

Plaintiffs agree that the payments above are consideration for the promises by Plaintiffs contained herein and that Defendants were not otherwise obligated to make these payments. The Parties further acknowledge that it is Defendants' position that Plaintiffs were not, at any time relevant to the claims asserted in the Lawsuit, employees of any of the Defendants, and that Defendants entering into this Agreement does not constitute an admission of liability by any Defendant.

Defendants shall issue the foregoing payments so that they are received at FairLaw Firm, 135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146, within twenty (20) calendar days after all of the following occur: (i) Defendants receive this Agreement executed by Plaintiffs; (ii) the Court approves this Agreement, upon joint motion of the Parties; and (iii) Plaintiffs and their attorney(s) provide any completed tax forms identified above. A check that is dishonored or returned for insufficient funds shall not be considered to have been timely received. While the payments shall be provided by the date above, the checks shall not be cashed by Plaintiffs and their counsel unless and until the Court dismisses the Lawsuit with prejudice, while retaining jurisdiction for enforcement. In the event the settlement is not approved by the Court or the Lawsuit is not dismissed with prejudice in full, the payments held in escrow shall be returned 15 days thereafter, unless a renewed request for settlement approval has been submitted in the interim.

3. **Dismissal of the Lawsuit.** Unless the lawsuit is not dismissed by the Court before, within five (5) days after the settlement payments have been received by Plaintiffs' attorney, the parties shall file a signed Joint Stipulation of Dismissal with Prejudice of the Lawsuit, which shall be prepared by Defendants. The Parties agree to take any actions necessary to effectuate the dismissal with prejudice, upon the condition that the Court retain jurisdiction for enforcement. Plaintiffs

understand and acknowledge that, if any portion of the claims asserted by them in the Lawsuit are not dismissed with prejudice or proceeds in any respect (except if a judgment is sought against a party that has defaulted in its payment obligation, as permitted by the Agreement), this Agreement shall have no force or effect, Plaintiffs shall be entitled to no payments hereunder, and any checks received by Plaintiffs or their counsel under Section 2 above must be voided and returned.

4. ***Release of Claims.*** Plaintiffs release Defendants, their parents, subsidiaries, affiliates, predecessors, successors, partnerships, investors, joint ventures, vendors, subcontractors, related entities, and all of Defendants' and the foregoing entities' past and present directors, officers, employees, and anyone else acting by, through, for, under, or in concert with any of them (collectively, the "Releasees") from any and all claims, charges, complaints, actions, causes of action, suits, grievances, controversies, disputes, demands, agreements, contracts, covenants, promises, liabilities, judgments, obligations, debts, damages (including, but not limited to, actual, compensatory, punitive, and liquidated damages), attorneys' fees, costs, and/or any other liabilities of any kind, nature, description, or character whatsoever that party may have against any or all of the Releasees arising out of their work or employment with any Releasee and/or any other fact, condition, circumstance, or occurrence whatsoever, up to and including the effective date of this Agreement, whether known or unknown, suspected, or concealed, and whether presently asserted or otherwise, including, but not limited to, all claims that any Releasee failed to pay any wages or other compensation or benefits including back pay, front pay, bonuses, commissions, equity, expenses, incentives, insurance, paid/unpaid leave/time off, profit sharing, salary, or separation pay/benefits.

The Parties acknowledge that they may later discover facts different from or in addition to those now known to them or believed by them to be true with respect to any or all of the matters covered by this Agreement, and the Parties agree that this Agreement nevertheless shall remain in full and complete force and effect.

5. ***Release Exclusions.*** The Release of Claims excludes the right to enforce this Agreement as well as any claims that cannot be waived by law. This includes any claim for unemployment or worker's compensation; any right to COBRA benefits or vested retirement benefits; and any existing rights of defense and indemnity or liability insurance coverage. Nothing in this Agreement limits Plaintiffs' right to file a claim, give information, or participate in an investigation or proceeding with a government agency such as the U.S. Securities and Exchange Commission (SEC), the Equal Employment Opportunity Commission (EEOC), or the Occupational Safety and Health Administration (OSHA) under any law protecting such rights. Plaintiffs give up, however, the right to any money or other personal benefit from any Releasee (not a government agency) for any such claim or litigation, whether brought by Plaintiffs or on their behalf, unless prohibited by law.

6. ***Court Approval.*** The Parties will submit the Agreement in a manner that limits disclosures to those necessary to obtain Court approval of the Agreement. If the Court does not approve the Agreement or does not dismiss the Lawsuit, in full, with prejudice, the Parties agree to engage in follow-up discussions with the goal of resolving the Court's concerns that precluded approval and/or full dismissal, to the fullest extent consistent with the parties' original, mutual intent at the time they agreed upon the settlement. If feasible, the Parties will then resubmit the Agreement for approval within ten (10) days, or if approval is again denied, they will take whatever measures are

necessary to achieve settlement approval, to the fullest extent consistent with the Parties' mutual intent at the time they agreed upon a settlement.

**7.** *Promise Not To Sue.* A "promise not to sue" means Plaintiffs promise not to sue any Releasee. This is different from the Release above. Besides releasing claims covered by the above Release, Plaintiffs agree never to sue any Releasee for any reason covered by the Release, subject to the Release Exclusions. Despite this Promise Not To Sue, however, Plaintiffs may file suit to enforce this Agreement. If any Plaintiff sues a Releasee in violation of this Agreement, she shall be required to pay that Releasee's reasonable attorney fees and other litigation costs incurred in defending against her suit.

**8.** *Confidentiality of Agreement.* This Agreement is strictly confidential. Other than as necessary to obtain Court approval of this Agreement, Plaintiffs will not communicate this Agreement's terms to any third party, whether verbally or in writing, by any means, including by social media. Any disclosure by Plaintiffs or their agents will cause Defendants and the Releasees irreparable harm that money cannot undo. Accordingly, a proven violation of this section will entitle Defendants to temporary and permanent injunctive relief. Except as required by law, Plaintiffs have not disclosed and will not disclose any term of this Agreement, including any payment under this Agreement, to anyone except their immediate family members and their legal/financial advisors. Each of them is bound by this Confidentiality of Agreement provision, and a disclosure by any of them is a disclosure by Plaintiffs. Except as relates to obtaining the Arbitrator's approval of the Agreement, the only comment that Plaintiffs or their legal counsel may make in response to an inquiry by a third party regarding the Lawsuit or this Agreement will be to say that "no dispute is pending." Plaintiffs further represent that, as of the date they execute this Agreement, they and their legal counsel have not disclosed the terms or fact of this Agreement to any individual.

**9.** *Non-Disparagement.* Plaintiffs promise not to do or say anything, verbally or in writing, directly or indirectly, that disparages, reflects negatively on, or otherwise detrimentally affects Defendants or any Releasee. This non-disparagement provision explicitly prohibits posting disparaging comments, remarks, videos, or reviews on social media platforms, including but not limited to Glassdoor, Indeed, Facebook, Yelp, search engine reviews, or other social media, career, or messaging platforms, or from encouraging or causing others to bring claims against Defendants or any Releasee.

**10.** *Confidentiality and Non-Disparagement Exclusions.* Nothing in this Agreement, including its confidentiality and non-disparagement provisions and the release and waiver of claims, is intended to limit Plaintiffs' alleged rights to engage in protected, concerted activity under Section 7 of the National Labor Relations Act ("NLRA") or to file a charge with, participate in any investigation by or testify in any proceeding before the National Labor Relations Board. This means, for example, that nothing in this Agreement prohibits Plaintiffs from speaking with co-workers or third parties about pay, hours, or terms and conditions of alleged employment (which Defendants deny) or from engaging in other protected, concerted activities under the NLRA. Plaintiffs waive any right to monetary or other relief, including reinstatement, which may be ordered by the NLRB as a result of or in connection with such charge, investigation or proceeding. Nothing in this Paragraph shall be construed as an admission that the NLRA, in fact, applies to Plaintiffs.

**11.** *Neutral Reference.* In response to any inquiry regarding their work for Defendants, SBP and/or SB Port shall provide Plaintiffs a neutral reference letter and/or a neutral reference (stating their name, role held, dates worked, and last rate of pay) and without any reference to any claim, lawsuit, or the resolution thereof.

**12.** *Non-Admission.* Neither Defendants' settlement offer(s) nor any payment under this Agreement is an admission that Plaintiffs have any viable claim against any Releasee. Defendants deny all liability. The Parties agree that, except as otherwise provided herein, they shall bear their own respective attorneys' fees and costs. Neither Plaintiffs nor Defendants shall be viewed as a prevailing party by virtue of executing this Agreement.

**13.** *Payment of Applicable Taxes.* Plaintiffs are and shall be solely responsible for their shares of all federal, state, and local taxes that they may owe by virtue of the receipt of any portion of the monetary payment provided under this Agreement. Plaintiffs agree to indemnify and hold Defendants harmless from any and all liability, including, without limitation, all penalties, interest and other costs that may be imposed on them by the Internal Revenue Service or other governmental agencies regarding their shares of any tax obligations that may arise from the monetary consideration made to Plaintiffs under this Agreement.

**14.** *Applicable Law.* This Agreement shall be interpreted under federal law if that law governs, and otherwise under the laws of Florida, without regard to its choice of law provisions.

**15.** *Enforceability.* If a court (or arbitrator) finds any part of this Agreement unenforceable, that part shall be modified and the rest enforced. If a court (or arbitrator) finds any such part incapable of being modified, it shall be severed and the rest enforced. A decision not to enforce this Agreement does not waive any future violation.

**16.** *Enforcement.* If any party defaults in its payment obligations under this Agreement, Plaintiffs shall provide the breaching party or parties notice of the default in payment and five (5) days to cure the default in payment. If the breaching party or parties fail(s) to timely ensure delivery of the payment identified at paragraph 2 by the conclusion of the cure period, Plaintiffs shall be entitled to seek from the still-breaching party (and the still-breaching party alone): (1) immediate entry of a judgment on an *ex parte* basis against each still-breaching party, jointly and severally, for $9,444.60 to Elisabet Principe minus all payments timely received, for $14,860.40 minus all payments timely received, for $14,464.80 for Roseline Servius minus all payments timely received, for $3,258.50 for Erlande Jean minus all payments timely received, and for $36,500.00 for FairLaw Firm minus all payments timely received; and (2) reasonable attorneys' fees and costs incurred in enforcing this Agreement from each still-breaching party. Defendants waive any defense to the entry of a judgment in accordance with the above other than the ability to assert and prove the defense of timely payment. If any check issued by one or more of the Defendants is dishonored or returned for insufficient funds, the person/entity to whom each such check is written shall also be entitled to pursue the remedies afforded by Fla. Stat. §68.065, in addition to the remedies identified above.

With respect to any other breach of the Agreement, the prevailing party shall be entitled to preliminary and permanent injunctive relief against the breaching party, plus attorneys' fees incurred in enforcing this Agreement from the breaching party (unless otherwise expressly

7

provided elsewhere in this Agreement) and any additional relief determined to be appropriate from the breaching party.

**17. *Counterparts.*** This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, with the same effect as if all parties had signed the same document. All such counterparts shall be deemed an original, shall be construed together, shall constitute one and the same instrument, and shall be considered confidential in accordance with the terms of this Agreement. A copy or .pdf version of this Agreement shall be considered the same as an original for all purposes.

**18. *Non-Assignment*.** Plaintiffs agree that they have not and will not assign this Agreement, any part of this Agreement, or any rights arising under this Agreement, to any person or entity. Plaintiffs further represent and warrant that, as of the effective date of this Agreement, the claims released under this Agreement have not been sold, assigned, or transferred, in whole or in part, to any other person or entity.

**19. *Entire Agreement.*** This Agreement constitutes the entire, complete, and integrated statement of each and every term and provision agreed to by and between Plaintiffs and Defendants related to Plaintiffs' release of claims. This Agreement supersedes any prior representations, promises, or warranties (oral or otherwise) made by Plaintiffs or Defendants as to such claims, and neither Plaintiffs nor Defendants shall be liable or bound to any prior representation, promise, or warranty (oral or otherwise) as to the matters covered by this Agreement, unless expressly set forth herein. This Agreement shall not be modified or canceled in any respect, except as provided herein by a writing executed by Plaintiffs and Defendants.

**20. *Other Representations*.** Plaintiffs agree:

- They have received all pay, compensation, benefits, leave, and/or time off they are due to date, including for overtime or vacation/PTO, or will receive the same through this Agreement;

- They have not suffered any on-the-job injury for which they have not already filed a claim, and the end of their work is not related to any such injury;

- The payments and other consideration provided in this Agreement are not related to sexual harassment or sexual abuse;

- They have had the opportunity to negotiate this Agreement with Defendants, and this Agreement shall not be construed for or against any party as a drafter of its terms;

- They were advised in writing, by getting a copy of this Agreement, to consult with an attorney before signing below; and

- They are signing this Agreement knowingly and voluntarily.

**\*\*　　THIS SPACE INTENTIONALLY LEFT BLANK　　\*\***

**<u>SIGNATURES CONTAINED ON NEXT PAGE</u>**

> READ THIS RELEASE CAREFULLY AND CONSIDER ALL OF ITS PROVISIONS BEFORE SIGNING IT: IT INCLUDES A RELEASE OF KNOWN AND UNKNOWN CLAIMS. IF YOU WISH, YOU SHOULD CONSULT AN ATTORNEY OR OTHER ADVISOR AT YOUR OWN EXPENSE.

By: *Elisabet Principe* (Apr 9, 2024 17:02 EDT)
ELISABET PRINCIPE     (Date)

By: *Trixie Belo-Osagie* (DocuSigned)
SBP STAFFING AND RECRUITING LLC     (Date)
Name: Trixie Belo-Osagie
Title: CEO/President

By: *Nohelany Burey* (Apr 10, 2024 08:16 EDT)
NOHELANY BUREY     (Date)

By: *Trixie Belo-Osagie* (DocuSigned)
SB PORT VENTURES LLC     (Date)
Name: Trixie Belo-Osagie
Title: CEO/President

By: *Iyelen Espinosa* (Apr 9, 2024 16:54 EDT)
IYELEN ESPINOSA     (Date)

By: *Trixie Belo-Osagie* (DocuSigned)
TRIXIE BELO-OSAGIE     (Date)

By: *Roseline Servius* (Apr 10, 2024 12:53 EDT)
ROSELINE SERVIUS     (Date)

By: *Debbie Giambruno*     4/12/2024
NOMI HEALTH, INC.     (Date)
Name: Debbie Giambruno
Title: General Counsel

By: *Erlande Jean* (Apr 10, 2024 19:10 EDT)
ERLANDE JEAN     (Date)

9